| | |
|---|---|
| G.J. a minor by next friends, MELISSA JENNINGS and CHRISTOPHER JENNINGS; and MELISSA JENNINGS and CHRISTOPHER JENNINGS, individually, <br><br>    PLAINTIFFS, <br>v. <br><br>ANDERSON COUNTY BOARD OF EDUCATION d/b/a ANDERSON COUNTY SCHOOL DISTRICT; LARRY FOSTER and LEISA FAIR, in their individual capacities, <br><br>    DEFENDANTS. | No. _____ |

# COMPLAINT

INTRODUCTION

This is an action for compensatory and punitive damages, a declaratory judgment, and injunctive relief against the Defendant Anderson County Board of Education, d/b/a Anderson County Schools, and its director of schools and former deputy director of schools who continuously, systematically, specifically and intentionally violated the rights of Plaintiffs by withholding nursing services from Plaintiff G.J. that were necessary for treatment of his diabetes, and by retaliating against G.J.'s parents, Melissa Jennings and Christopher Jennings, for advocating for his rights and those of other students with diabetes. Plaintiffs bring these claims pursuant to the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Section 1983 of the Civil Rights Act.

## JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343. All events related to this case occurred in Anderson County, Tennessee, and, therefore, venue is proper in the Eastern District of Tennessee.

## PARTIES

2. Plaintiff G.J. is a resident of Anderson County, Tennessee. He is a qualified individual with a disability. G.J. has Type 1diabetes, a disability that substantially limits the major life activities of eating, endocrine function, and caring for himself.

3. Plaintiff G.J. is enrolled as a student at Norris Elementary School, Norris, Tennessee, which is a school governed by the Defendant Anderson County Board of Education.

4. Plaintiffs Melissa Jennings and Christopher Jennings are parents of G.J. and are residents of Anderson County, Tennessee.

5. Defendant Anderson County Board of Education (hereinafter "ACBOE") is the governing body of the Anderson County School District, a public school district. It is responsible for the actions of its employees and administrators.

6. Defendant Larry Foster, at all times relevant, was the Director of Schools for Anderson County Schools. He is the chief executive officer of the school system and has general supervision of all public schools, personnel and departments of the school system.

7. Defendant Leisa Fair, at all times relevant to this Complaint until January 1, 2015, was the Deputy Director for Schools and Student Affairs, with responsibility for, *inter alia*, nursing services for Anderson County Schools.

2

8. Defendant ACBOE receives Federal financial assistance.

9. Defendant ACBOE acted with deliberate indifference in violating the rights or privileges of plaintiffs under the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973.

10. Defendants Foster and Fair acted with deliberate and reckless indifference to the protected rights of Plaintiffs under Section 1983 of the Civil Rights Act.

FACTUAL ALLEGATIONS

11. Type 1 Diabetes Mellitus is a medical condition in which a person's body does not manufacture insulin. Treatment requires continual monitoring of blood-glucose levels and administration of insulin several times daily. The proper dosage of insulin varies with each treatment.

12. A variety of factors determines the dosage of insulin required to maintain an appropriate level of blood glucose. Those factors include, but are not limited to, diet, hydration level, illness, growth, exercise level, stress level, and recent and current blood glucose levels. The person deciding on the insulin dosage must accurately count the number of carbohydrates ingested as well as how the other factors might affect the child.

13. Blood-glucose levels must be monitored closely to prevent hypoglycemia, which is low level of blood glucose in a person's system. If the level falls too low, it can result in unconsciousness, seizures, coma and death. In such emergencies, a substance called glucagon is injected to elevate blood-glucose levels.

14. Plaintiff G.J. was diagnosed with Type 1 diabetes when he was five years old and in kindergarten.

15. Due to his condition, G.J. requires at least four and up to 12 shots of insulin per day depending on the factors listed in Paragraph 12. His blood-glucose level must be checked at least eight times per day, which requires pricking a finger to draw blood.

16. Since G.J. was first diagnosed with diabetes, his caregivers have been required by his doctor to carry a glucagon dosage in case of a hypoglycemic emergency.

17. His daily diabetes treatment requires him to drink water frequently. He must refrain from drinking other fluids or eating snacks without first checking his blood-glucose level. If he participates in a school party, he generally must have an additional shot of insulin at school. If his blood-glucose level is low, he must forego recess or P.E. Going on a school field trip requires close supervision by a nurse or parent. He must carry a diabetes kit with him at all times.

18. G.J. many times is unaware that his blood-glucose level is low, which means he is at risk of passing out without knowing to ask for help. If he should pass out and not get an immediate glucagon shot, he is at immediate risk of seizure, coma, or death.

19. Plaintiff G.J. has been considered by ACS as a qualified individual for a 504 Plan since November 2010. He has attended Norris Elementary School since August 2010.

20. Starting in Kindergarten, school nurses provided daily diabetes care for G.J., including blood glucose monitoring and administration of insulin by injection, according to the terms of a 504 Plan designed for G.J.

21. At the beginning of the 2013-2014 school year, plaintiffs encountered problems with constant changes in nurses assigned to Norris Elementary School to provide diabetic care for G.J. Some of the nurses and substitute nurses lacked training in using G.J.'s new

4

device for injecting insulin called a Novopen Junior. Many of the nurses were unknown to G.J. and lacked knowledge of his routine and medical history. G.J. was terrified to go to school because he did not know from one day to the next who the nurse would be, or whether that nurse would be able to operate the Novopen Junior properly.

22. Plaintiff Melissa Jennings complained to Defendant Deputy Director of Schools Leisa Fair about the problems G.J. was encountering related to his diabetic care. Plaintiff Melissa Jennings, in order to protect her son, went to his school almost every day to administer the insulin shot herself.

23. On September 18, 2013, after her unsuccessful efforts to get Deputy Director Fair to provide a regular, trained nurse to provide diabetic care for her son, Plaintiff Melissa Jennings emailed School Director Foster and the members of the Board of Education about the problems with the nursing staff.

24. After the email to School Director Foster and Board members, Deputy Director Fair responded to the parents with a letter, dated September 20, 2013, acknowledging the parents' concern over the quality of care provided by school nurses and suggesting that a representative from G.J.'s doctor's office attend an upcoming meeting. The letter then stated: "If this is not a consideration, we will look to **other options** to clarify the doctor orders for the nurses. . ."

25. After receiving the letter from Deputy Director Fair, the parents of G.J. exercised their federal rights and filed a complaint with the Office for Civil Rights of the Department of Health and Human Services alleging that ACS was failing to provide reasonable accommodations to G.J. because it was not providing nurses properly trained in the

administration of insulin.  The complaint was later refiled with the Office for Civil Rights of the Department of Education in December 2013.

26. During the Fall Break in October 2013, the parents trained G.J. to self-administer insulin using his insulin pen.  Because G.J. would now self-administer insulin, a nurse was not required to perform this invasive procedure, but a nurse was required by the 504 Plan to monitor him while he self administered his insulin shot.

27. A meeting of the 504 Team was held on November 19, 2013, in which a 504 plan was updated to include "Specialized Nursing Services" four times daily to monitor his blood-glucose levels and the self-administration of insulin by G.J. The Plan identified three staff members to respond and take necessary action in the event of an emergency in the absence of the nurse.

28. During the course of the 2013-2014 school year, at least nine different nurses provided services to G.J. at Norris Elementary School.  By the end of the 2013-2014 school year, the nursing situation had stabilized; and, G.J. was self-administering his insulin dosage with nurse supervision and with consultation assistance by telephone from Melissa Jennings who determined the insulin dosage as stated in G.J.'s doctor's orders.

29. The OCR complaint was dismissed on June 5, 2014, after Ms. Jennings reported to OCR that a competent nurse was assigned to the school and the situation had changed.

30. On July 7, 2014, in retaliation for the plaintiffs' protected activity and advocacy for G.J., Deputy Director Leisa Fair proposed a change in the school district's Student Health Care policy to the Board of Education's Policy Committee. The proposed policy change would require a physician to order a specific insulin dosage and would not allow a parent to

6

determine the dosage, even if the doctor included that instruction in the doctor's order presented to the school.

31. The ACBOE approved the policy on first reading at the July 10, 2014, meeting. Official enactment of a policy requires approval by the Board on two readings.

32. The 504 Plan, dated November 19, 2013, was still in effect at the beginning of the 2014-2015 school year. That plan specifically required nursing services for blood-glucose monitoring between 9:00 and 9:30 a.m., before lunch, and between 2:00 and 2:30 p.m., and to monitor G.J. when he self-administered insulin after lunch.

33. At the beginning of the 2014-2015 school year, the proposed policy change for Student Health Services had not been enacted by the Board of Education on second reading.

34. On or about 3 p.m. on August 5, 2014, the day before school was scheduled to start, the school nurse at Norris Elementary School gave Plaintiff Melissa Jennings a written memorandum from Deputy Director Fair stating:

In order to comply with Tennessee Nurse Practice Act and Anderson County Schools' Board Policy, physician orders received by Anderson County Schools for administration of student medication at school must be specific to dosage and time for the licensed healthcare professional to follow.

Physician orders stating medication given at school is to be determined by anyone (family member or nursing staff) will not be accepted.

While school nursing services are provided by the school system as an accommodation for students with medical need, health services must align with state mandates of the licensing agency. Anderson County School Nurses are authorized to administer medications in accordance to their license for healthcare practice.

35. Because G.J.'s insulin dosage varies each time due to factors listed in Paragraph 12, the standing physician orders from G.J.'s doctor stated that the insulin dosages are to be

7

"determined by parent." G.J. was treated for his diabetic condition by a pediatric endocrinology group which had trained G.J.'s parents to administer diabetes care, including how to accurately determine each insulin dosage.

36. G.J.'s treating endocrinologist also prescribed daily blood glucose monitoring and the administration of glucagon in the event G.J. became unconscious or had seizures.

37. Plaintiff Melissa Jennings presented these orders to the school nurse who, acting on instructions from Deputy Director Fair, refused to accept any of the doctor's orders for G.J. because a specific insulin dosage was not prescribed by the physician. Deputy Director Fair ordered the school nurses to provide no diabetic care to G.J.

38. Upon information and belief, G.J. was one of only three students with diabetes in the Anderson County School system who were affected by the position taken by Deputy Director Leisa Fair. Also, upon information and belief, the parent of the other two children withdrew them from public school after receiving by mail Defendant Fair's written memorandum about the school not accepting physician orders that do not contain a specific dosage.

39. The written 504 Plan for G.J. also required, in the absence of the nurse, that a "team of staff members will respond and take necessary action according to the Individual Health Plan." The 504 Plan specifically named the members of the "team."

40. Upon information and belief, **none** of the persons designated as staff members of the team had been trained in the administration of glucagon or in blood-glucose testing.

41. The policies of the ACBOE prohibit any of the persons designated as members of the team from performing any of those types of procedures because they are not "health care

8

professionals."

42. On the first day of the 2014-2015 school year, August 6, 2014, G.J. went to school. He was in a new classroom with a new teacher. Ordinarily, at the time for his first blood-glucose check, the teacher would excuse him to go for his blood check. However, on this day, the school principal came to the classroom and pulled G.J. out of class and took him to her office. The principal called Melissa Jennings and handed the phone to G.J. His mother explained to him that the nurse would not assist him. She tried to calm him and assure him that he would be safe. She told him to go to the nurse's station to get his supply box. His mother talked him through a check of his glucose level, while trying to explain why the nurse was not assisting. G.J. told his mother that he was afraid "they are going to let me pass out."

43. This exercise took over 30 minutes, instead of the usual five minutes of missed class.

44. Melissa Jennings went to the school for the before lunch check and to administer insulin after lunch. She was not allowed to use the nurse's office and had to use a conference room. His mother assured G.J. on several occasions that she would make sure he was safe.

45. On August 7, 2014, Deputy Director Fair explained in a letter to Mrs. Jennings that no health services would be provided to her son until she provided a physician's orders that has "specific dosage for administration by a nurse." G.J., at this time, was self-administering his insulin shots.

46. G.J.'s physician provided further instructions by note dated August 8, 2014, stating: "school form instructions are based on MD recommendations to meet patient's needs."

Deputy Director Fair refused to accept those instructions.

47. Prior to the August 14, 2014, meeting of the Board of Education, Plaintiff Melissa Jennings exercised her federally protected right to notify the Director of Schools and Board members in writing about the impact the change in the Student Health Services Policy would have on G.J. and other students with diabetes in the school system. She also told them about how the school was refusing to follow the requirements of her son's 504 Plan.

48. At the Board meeting on August 14, 2014, Plaintiff Melissa Jennings made an oral presentation to the Board about the impact of policy changes on children with diabetes, and told them that Deputy Director Fair was enforcing the policy change before it was enacted, which the board chairman agreed during the meeting was improper.

49. Defendant ACBOE ignored the pleas by Ms. Jennings and another parent of a child with diabetes and passed the change in policy on second reading on August 14, 2014. It became the official policy.

50. Although the change in policy did not change the 504 Plan for G.J., ACS still refused to provide the nursing services outlined in the 504 Plan to monitor blood-glucose testing or the administration of glucagon in emergencies, and refused to accommodate G.J. by monitoring his self-administration of insulin at a dosage determined by his mother.

51. On August 26, 2014, the parents again filed a complaint with the Office for Civil Rights.

52. Because of the refusal by ACS to provide any diabetic care for their son, either Melissa Jennings or Christopher Jennings performed those services on a daily basis from August 6, 2014, to October 6, 2014. They came to Norris Elementary several times a day to

monitor blood-glucose levels and administer insulin. They also felt compelled to remain near the school in case G.J. suffered a hypoglycemic episode that would require a glucagon shot.

53. Because of the anxiety over having a child enrolled in a school that refused to provide diabetic care to him, and the time it was taking away from work schedules, the parents finally obtained a doctor's order that set parameters for the insulin dosage based on the blood glucose level and other factors. This resulted in the school nurse resuming monitoring of G.J. while he self-administered insulin after lunch, in addition to blood glucose testing in the morning and before lunch. The insulin dosage was determined after consultation by the nurse with Melissa Jennings by phone.

54. The nurse on duty at Norris Elementary School, however, transferred to Norris Middle School each afternoon and was not available to monitor G.J. for the afternoon blood-glucose testing, or to provide other diabetic services to G.J. in case of emergencies, as required by the 504 Plan.

55. During the 2014-2015 school year, G.J. had documented recordings of blood glucose levels in the hypoglycemic range on 15 separate occasions, placing him at great risk particularly at times when nursing services were being refused or when a nurse was not available. The school's plan to call 911 in case G.J. fell into unconsciousness, instead of administering glucagon, was deliberately indifferent to G.J.'s medical needs and could have been fatal.

56. The school nurse only began the afternoon monitoring on March 12, 2015, one month after ACS entered into a Resolution Agreement with OCR in which ACS agreed to

11

provide a nurse for the afternoon monitoring.

FIRST CAUSE OF ACTION

57. The allegations as set forth in paragraphs 1-56 above are realleged and incorporated herein as if set forth verbatim.

58. Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. §794, prohibits a public school that receives federal funds from excluding a student with a disability from participation in, denying a student with a disability the benefits of, or subjecting a student with a disability to discrimination from any program or activity receiving federal financial assistance, solely by reason of his disability.

59. Defendant ACBOE has violated Section 504 by refusing to provide Plaintiff G.J. nursing services listed in his 504 Plan that were designed to allow him to attend school the same as any child. By failing to provide the reasonable accommodations stated in his 504 Plan, Defendant ACBOE subjected him to discrimination on the basis of his disability by placing him in danger of a serious medical episode that could have resulted in serious harm or death.

60. The regulations implementing Section 504 require a school to provide a qualified student with a free and appropriate public education. 34 C.F.R.§104.33

61. Defendants violated the regulations implementing Section 504 by providing different or separate aid, benefits, or services to a person with a disability and by otherwise limiting a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service. (34 C.F.R. §104.4(b)(1)(iv) & (vii))

62. Defendants retaliated against Plaintiffs Melissa Jennings and Christopher Jennings for exerting their protected advocacy rights on behalf of their son in violation of 42 U.S.C. §12203 and 28 C.F.R. §35.134.  See, *A.C. v. Shelby County Board of Education*, 711 F.3d 687, (6th Cir. 2013)

63. Defendants took adverse action against Plaintiffs by changing a school policy and then refusing to provide diabetic care to G.J. as required by his 504 Plan.

64. The unlawful practices complained of were intentional and done with deliberate indifference.

65. Plaintiffs are entitled to compensatory damages for the intentional denial of their rights.

SECOND CAUSE OF ACTION

66. The allegations as set forth in paragraphs 1-56 above are realleged and incorporated herein as if set forth verbatim.

67. The Americans with Disabilities Act (hereinafter "ADA") mandates that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C.§12132.

68. Defendants violated the ADA, 42 U.S.C. §12132(b)(1)(i) (denial of participation), 42 U.S.C. §12182 (b)(1)(ii) (participation in unequal benefit), 42 U.S.C. §12182(b)(1)(iv)(C) & (D) by refusing to provide individual accommodations stated in the 504 Plan that were necessary for G.J. to attend school.

69. Defendants have violated the Americans with Disabilities Act 42 U.S.C. §12182 (b)(2)(I) by  imposing  eligibility criteria which screen out or tend to screen out an individual with

13

a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, when such criteria can be shown not necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered.

70. Defendants have violated the Americans with Disabilities Act 42 U.S.C. §12182 (b)(2)(ii) by failing to make a reasonable modification to policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.

71. Defendants have violated the Americans with Disabilities Act 42 U.S.C. §12182 (b)(2)(iii) by failing to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

72. Defendants retaliated against Plaintiffs Melissa Jennings and Christopher Jennings for exerting their protected advocacy rights on behalf of their son in violation of 29 U.S.C. §794(a) and 29 C.F.R. §33.13. See, ***A.C. v. Shelby County Board of Education***, 711 F.3d 687 (6th Cir. 2013)

73. Defendants took adverse action against Plaintiffs by changing a school policy and then refusing to provide diabetic care to G.J. as required by his 504 Plan.

74. The unlawful practices complained of were intentional and done with deliberate indifference.

## THIRD CAUSE OF ACTION

75. The allegations as set forth in paragraphs 1-56 above are realleged and incorporated herein as if set forth verbatim.

76. Defendants are all state actors and have violated Plaintiffs civil rights protected by the Civil Rights Act of 1973, 42 U.S.C. §1983.

77. The right of parents to be free from retaliation for exercising their First Amendment right to advocate for their child in a school setting is clearly established. See, ***Wenk v. O'Reilly***, 783 F.3d 585(6th Cir. 2015)

78. Plaintiffs Melissa and Christopher Jennings engaged in protected activity by advocating for accommodations for their son and those of all diabetic children, and by filing a complaint with the Office for Civil Rights in 2013.

79. Only after the OCR complaint was dismissed, ACS took adverse action by enacting a policy designed to allow it to refuse to accept doctor's orders for G.J.'s diabetic care at school, and by refusing to follow the requirements of G.J.'s 504 Plan.

80. Upon information and belief, these actions by ACS were an attempt to force the parents to remove their child from the public school system.

81. These actions were intentional, taken with deliberate or reckless indifference to the rights of plaintiffs, and placed G.J. at great risk of harm. Plaintiffs are entitled to punitive damages against Defendants Foster and Fair.

82. Due to this retaliation, G.F., Melissa Jennings and Christopher Jennings are entitled to compensatory damages.

RELIEF REQUESTED

Plaintiffs ask the Court to provide the following relief:

1. Grant a permanent injunction enjoining Defendant Anderson County Board of Education, its administrators and employees from unilaterally refusing to provide services that the school is required by a 504 Plan to provide to a child with a disability.

2. Issue an order declaring that the procedures followed by Anderson County School District in refusing to provide diabetic care to G.J. violated the requirements of Section 504 and the ADA;

3. Award compensatory damages in an amount as the proof may show for lost wages, emotional distress, and other costs incurred by G.J., Melissa Jennings and Christopher Jennings;

4. Award punitive damages against individual defendants Larry Foster and Leisa Fair.

5. Award of reasonable attorney fees and costs;

6. Issue an Order requiring Anderson County School District to follow accommodation procedures that comply with Section 504 and ADA requirements;

7. Set the case for trial by a jury;

8. Award of such further and additional relief as the Court deems just and proper.

Respectfully submitted,

/s/
WILLIAM ALLEN, BPR#004264
MOSTOLLER, STULBERG, WHITFIELD & ALLEN
136 South Illinois Avenue, Suite 104
Oak Ridge, TN 37830
(865) 482-4466 phone
ballen@msw-law.com